Argued and submitted November 12, 1999, affirmed June 28, 2000

In the Matter of Curtis Williams,
Cherise Williams and Dennise Williams, Minor Children.

STATE ex rel STATE OFFICE FOR SERVICES TO
CHILDREN AND FAMILIES,
*Appellant,*

*v.*

Curtis WILLIAMS,
Cherise Williams and Dennise Williams,
*Respondents.*

(8904-80945 N,O,P; CA A105938)

7 P3d 655

Denise G. Fjordbeck argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds.

Karen S. Torry argued the cause for respondents. With her on the brief was Juvenile Rights Project, Inc.

Before Edmonds, Presiding Judge, and Armstrong, and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

This is an appeal from an order of the juvenile court requiring the State Office for Services to Children and Families (SCF) to provide the children's attorney with the home studies of families SCF is presenting to its adoption committee for these children. We review for an abuse of discretion and affirm. ORS 419A.200(5); ORS 19.415(3).[1]

In this ongoing juvenile proceeding, the children have been in the legal custody of SCF under the jurisdiction of the juvenile court since November 1993. The court terminated their parents' parental rights in January 1998. At that time, SCF was granted the authority to consent *in loco parentis* to the children's adoption because the children were permanently committed to the agency.[2] SCF reported at a review hearing a year later that it was continuing efforts to place the children for adoption. At that hearing, the children's attorney made an oral motion requesting the court "to order the agency to allow the access to the home studies" used in the selection of an adoptive family. Although SCF objected, the juvenile court granted the children's motion and ordered that "SCF must provide access to adoptive home studies to children's attorney." SCF argued that the adoptive home studies were records "exempt from disclosure under OAR 431-010-0040(1)(a) and ORS 192.502(1), (2), and (4)." In response, the children's attorney suggested that the concerns about confidentiality raised by SCF could be met by the court directing her not to disclose information contained in the home studies or by directing SCF to remove the names, addresses and other identifying information of prospective adoptive families. Ultimately, the court issued the following order:

---

[1] ORS 419A.200(5) provides that an appeal to this court in a juvenile proceeding shall be conducted in the same manner as an appeal in an equity suit. *See also State v. Pieretti*, 110 Or App 379, 382, 823 P2d 426 (1991), *rev den* 313 Or 354 (1992) (explaining that "[a]lthough we review equitable proceedings *de novo*, we review procedural rulings made in the course of those proceedings only for abuse of discretion").

[2] The children's attorney was appointed by the court in November 1993 pursuant to ORS 419B.195. In the judgment terminating the parents' rights, the court ordered that appointment continued until the completion of the adoption process.

"The [previous] order is affirmed and modified as follows: The children's attorney shall be provided a photocopy of the home studies of families SCF is taking to adoption committee for these children with identifying information (such as names and addresses) redacted and the children's attorney shall not redisclose the information contained therein, without prior consent of SOSCF or the Court."

SCF appeals from that order.

■ We first turn to the issue of whether the order requiring SCF to provide the children's attorney with copies of the home studies is appealable.[3] SCF asserts that it is appealable under ORS 419A.200(1) (1997).[4] That statute provided:

"* * * any person or entity, including, but not limited to, a party to a juvenile court proceeding under ORS 419B.115(1) or 419C.285(1), whose rights or duties are adversely affected by a final order of the juvenile court may appeal therefrom. An appeal from a circuit court shall be taken to the Court of Appeals, and an appeal from a county court shall be taken to the circuit court."

Before it was repealed, renumbered and reenacted, the relevant language in ORS 419A.200(1) was found in ORS 419.561(1). We have held that the standards for appealability established in cases interpreting ORS 419.561(1) are applicable to ORS 419A.200(1). *State ex rel Juv. Dept. v. Vockrodt*, 147 Or App 4, 7, 934 P2d 620 (1997). In *State ex rel Juv. Dept. v. Nagle*, 36 Or App 237, 240-41, 584 P2d 338 (1978), we observed:

"The perimeters of ORS 419.561(1) have never been definitely stated, perhaps because of the unforeseeable variety of remedial action available to the juvenile court. An order establishing wardship is clearly an appealable order within

___

[3] Before oral argument, we ordered SCF to show cause why we should not dismiss the appeal for want of jurisdiction. At that time, we determined that the order was appealable. "Because the issue is one of jurisdiction, that determination is not controlling, and we may reconsider it. *See* ORAP 7.15(3)." *State ex rel Juv. Dept. v. Black*, 101 Or App 626, 628 n 1, 729 P2d 1225 (1990). After oral argument, we again ordered SCF to show cause why the appeal should not be dismissed for want of jurisdiction, and the parties submitted further briefing on the issue.

[4] The order issued March 10, 1999, making the 1997 statutes and rules applicable. The 1999 Legislature enacted numerous amendments to these statutes to implement the federal Adoption and Safe Families Act. Or Laws 1999, ch 859, § 15 (effective October 1, 1999).

the statute. The authority of the court to intervene into the life of a ward is broad * * * and subject to modification * * *. Because wardship can last many years, because the court may modify the requirements of wardship, because wardship orders affect profound aspects of personal and family life, and because a wardship should not continue if the jurisdictional facts upon which it is based have ceased to exist, we do not hold that all acts of the juvenile court after the initial creation of wardship are insulated from appellate scrutiny. Rather, we hold only that *where there is no substantial change in the nature or degree of the conditions relating to the wardship or where a right or duty is not affected by a ruling on a motion, there is no appealable order.* We need not here catalog which forms of order are appealable under ORS 419.561(1) and which are not. It is enough for this case to hold that an order upon review continuing a wardship without substantial change in the conditions relating to wardship is not a final order affecting the right or duties of a party." (Emphasis added; citations omitted.)

The initial determination to be made under ORS 419A.200(1) is whether the appeal is from a "final order." ORS 419B.476(6) (1997) provides that "[a]ny *decision* of the court made pursuant to the dispositional review hearing shall be a final order for the purposes of ORS 419A.200." (Emphasis added.) The juvenile court's order was made as part of a dispositional review hearing. We conclude that, for purposes of this case, the order is a "final order" under 419A.200(1).

The inquiry remains whether the order made a substantial change in the conditions relating to the children's custody, or whether it adversely affects SCF's rights or duties. *Vockrodt*, 147 Or App at 6, 7. Our review of the order does not indicate that it made a substantial change in the conditions relating to the wardship. There is no evidence in the record that the order affected the children's placement, their legal status or SCF's plans for their placement. The remaining issue is whether the order adversely affects a right or duty. SCF argues that

"[t]he nature and effect of the March 10 order are such as to impact the duties of SCF with regard to the children permanently committed to its care. SCF's right and duty to

protect the confidentiality of adoptive home studies under applicable statutes and regulations has been adversely impacted by the juvenile court order."

It relies on OEC 509, ORS 192.502, ORS 409.225 and OAR 413-010-0040(1)(a) as authority for its asserted duty to keep the home studies confidential. We hold that SCF is adversely affected by the juvenile court's order if that claim is correct, and, therefore, the order is appealable under ORS 419A.200(1).[5]

SCF argues that the statutes and regulations governing the confidentiality of adoptive home studies make no exception for the court's order and that families who express interest in adopting children will be deterred by the prospect that their home studies are held not to be confidential. We consider the issue to be one of statutory interpretation, regardless of SCF's policy argument. It is helpful to our inquiry to explain at some length the unique interaction between the juvenile court proceeding and SCF's administrative process that combine to place children who are wards of the juvenile court in adoptive homes.

This case affords an example of how the process is intended by the legislature to work. After terminating their parents' rights, the juvenile court placed these children in the legal custody of SCF, an "agency authorized to consent in loco parentis to the adoption of the children" under ORS 419B.527.[6] Under ORS 419B.100(1)(d),[7] the juvenile court

---

[5] In *State ex rel SOSCF v. Corbit*, 165 Or App 653, 997 P2d 294, *decision vac'd by order* May 8, 2000, we held that a similar order was not appealable under ORS 419A.200(1). That opinion has no precedential value as it was vacated because the case became moot before the opinion issued. With the benefit of additional briefing in this case, we reach a different result.

[6] ORS 419B.527(1) (1997) provided:

"After the entry of an order terminating the rights of the parent or parents of the child, the court may:

"(a) Place the child in the legal custody and guardianship of a public or private institution or agency authorized to consent in loco parentis to the adoption of children. An order pursuant to this paragraph is a 'permanent commitment' for the purposes of ORS 109.305, 109.309, 109.312 to 109.330 and 109.350 to 109.390; or

"(b) Make any order directing disposition of the child which it is empowered to make under this chapter."

[7] ORS 419B.100(1) provides, in relevant part, that

maintained jurisdiction over the children and is charged with ensuing that their best interests are protected. At that time, SCF began the process of finding an adoptive placement for the children pursuant to OAR 413-120-0000 through OAR 413-120-0830.

Persons interested in adopting children from SCF are required to apply for a home study. OAR 413-120-0200. The applicants must meet the minimum standards for adoptive homes established under OAR 413-120-0310. Potential homes for adoption are selected by the children's caseworker from applicants with completed home studies. OAR 413-120-0040. One or more homes with completed studies could be selected for the adoption committee's consideration. OAR 413-120-0030(2). When the adoption committee considers a proposed home, the rules contemplate allowing the children to attend that portion of the committee meeting that SCF refers to as the "child's presentation." OAR 413-120-0035(3), (4). Also, the children's attorney "may be invited by the child's worker to assist in the presentation of the child[ren]." OAR 413-120-0035(4).[8] After considering the input of the children and the applicant(s), the committee considers whether a "match" exists between an applicant and the children. OAR 413-120-0020. Ordinarily, one adoptive home is selected, but in some instances, a back-up applicant can be chosen. *Id.* On the other hand, the adoption committee may not select an adoptive home but may instead make a recommendation on how to proceed. *Id.* After the selection is made, SCF files a completed placement report together with the home study and its consent to the adoption with the juvenile court, requesting that the court enter a decree of adoption. ORS 419B.529. After the prospective adoptive parent files a required form, a hearing is held by the juvenile court. "[T]he

---

"the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"\* \* \* \* \*

"(d) Who is dependent for care and support on a public or private child-caring agency that needs the services of the court in planning for the best interest of the person[.]"

[8] OAR 413-120-0035(1) provides that "[a]ll persons attending adoption committee are bound by SOSCF confidentiality administrative rules[.]"

juvenile court that entered the order of permanent commitment may proceed * * * and may enter a decree of adoption" in the event that the court finds that the proposed adoption is in the best interest of the children. ORS 419B.529(3).

As is apparently the situation in this case, the process of finding an adoptive family, completing the home study and selecting a family can take considerable time. During that process, the juvenile court retains jurisdiction over the child and has authority to remove the child from SCF's custody or to make other provisions that are in the best interests of the child.[9] Review hearings must be conducted periodically and at any time upon the request of SCF, the children's attorney, or upon the juvenile court's own motion. ORS 419B.470 (1997). Here, the juvenile court was required by ORS 419B.476(5) (1997) to conduct a review hearing during which it "determine[d] the adequacy of and compliance with the case plan and case progress report." At the hearing in which the order on appeal was entered, adoption continued to be the case plan presented by SCF for these children. In sum, the legislature granted the juvenile court broad supervisory

---

[9] ORS 419B.476(5) provides that the juvenile court may

"(a) Order the office to develop or expand a case plan or case progress report which must be submitted within 10 days after the hearing;

"(b) Set a court hearing at a specific later time;

"(c) Direct the local citizen review board to review the status of the child prior to its next review * * *;

"(d) Order the office or other agency directly responsible for the child to modify the care, placement and supervision of the child; and

"(e) Determine whether the office or other agency directly responsible for the child has made reasonable efforts to reunify the family. If an Indian child is involved, determine whether the office or other agency directly responsible for the child has made active efforts to provide remedial services and rehabilitative programs to prevent the breakup of the Indian family prior to removal of the child from the home."

In addition, at any time before the pendency of a proceeding for adoption of the children the juvenile court may under ORS 419B.527(1):

"(a) Place the child in the legal custody and guardianship of a public or private institution or agency authorized to consent in loco parentis to the adoption of children. An order pursuant to this paragraph is a 'permanent commitment' for the purposes of ORS 109.305, 109.309, 109.312 to 109.330 and 109.350 to 109.390; or

"(b) Make any order directing disposition of the child which it is empowered to make under this chapter." See also ORS 419B.426 (establishing the limitations on orders under ORS 419B.527).

authority under the statutes in effect at the time the court entered its order over wards of the court for whom SCF planned adoption.

Next, we turn to the statutory and rule provisions addressing the role of children and their counsel in the court proceedings and administrative process in effect at that time. ORS 419B.195 provides:

> "(1)   If the child, the parent or guardian requests counsel for the child but is without sufficient financial means to employ suitable counsel possessing skills and experience commensurate with the nature of the petition and the complexity of the case, the court may appoint suitable counsel to represent the child. Whenever requested to do so, the court shall appoint counsel to represent the child in every case filed pursuant to ORS 419B.100.

> "(2)   Upon presentation of the order of appointment under this section by the attorney for the child, any agency, hospital, school organization, division or department of the state, doctor, nurse or other health care provider, psychologist, psychiatrist, police department or mental health clinic shall permit the attorney to inspect and copy any records of the child or children involved in the case, without the consent of the child or children or parents. This subsection does not apply to records of a police agency relating to an ongoing investigation prior to charging."

OAR 413-120-0015 provides

> "(1)   Adoption placement selection decisions are never made unilaterally because collaborative decision-making arrives at better decisions.

> "(2)   Adoption selection is an important decision with a life-long impact."

OAR 413-010-0180(12) provides that each of the children has the right "[t]o be involved, in accordance with his or her age and ability and with the law, in making major decisions that affect his or her life." As indicated above, the children and their attorney may be a part of the "child's presentation" to the adoption committee. OAR 413-120-0035(3), (4). As provided in ORS 419B.195(2) and demonstrated below, the children's attorney has access to most, if not all, the records in

the adoption process pertaining to the representation of the attorney's clients.

With that context in mind, we turn to the parties' specific arguments. SCF argues:

> "The juvenile court erred in ordering SCF to disclose the adoption home studies to the attorney for the children. The statutes and regulations governing confidentiality of these records make no such exception, and no public purpose can be served by disclosure of these records. On the other hand, the interest of the public and of the children in encouraging, or at least not discouraging, potential adoptive families from coming forward far outweighs any benefit that might be realized. The role of counsel for the children under the applicable [sic] does not include determining whether a particular family is an appropriate adoptive resource for these children; rather, her role is to ensure that the procedural rights of the children are protected in the adoption process."

SCF concludes "that neither the children's attorney[,] nor the juvenile court ha[s] any role to play until SCF agrees to support a petition for adoption by a particular family."

■   The children assert in response that

> "SOSCF has failed to demonstrate that the juvenile court erred in ordering the agency to provide photocopies of redacted home studies of prospective adoptive families to the children's attorney. The Public Officer Privilege and the Oregon Public Records Act do not apply to the facts of this case because the children's attorney is not acting as a member of the public and no public disclosure is sought. Even if those statutes did apply, the agency has failed to carry its burden of proving that withholding the documents is warranted.

> "No other provision in statute or administrative rule specifically prohibits disclosure to the attorney. Several provisions in statute and administrative regulation authorize disclosure of otherwise confidential information to the children's attorney in a juvenile court case. Finally, the agency has failed to demonstrate that any public interest would be served by prohibiting disclosure, or that any public harm would result from it. The children, by contrast, have a clear interest in adequate legal representation during this critical phase of the juvenile court case and counsel

has been appointed by the court to provide it. The juvenile court order furthers the children's interest while protecting the privacy of prospective adoptive parents."

SCF relies on OEC 509, ORS 192.502, ORS 409.225 and OAR 431-010-0040(1)(a) as authority for its duty to keep the home studies confidential. OEC 509 provides that "[a] public officer shall not be examined as to public records determined to be exempt from disclosure under ORS 192.501 to 192.505." ORS 192.502 enumerates certain public records that are exempt from disclosure under the Public Records Law. ORS 192.502 provides, in relevant part, that the following public records are exempt:

"(2) Information of a personal nature such as but not limited to that kept in a personal, medical or similar file, *if the public disclosure thereof would constitute an unreasonable invasion of privacy*, unless the public interest by clear and convincing evidence requires disclosure in the particular instance. The party seeking disclosure shall have the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy.

"* * * * *

"(4) Information submitted to a public body in confidence *and not otherwise required by law to be submitted*, where such information should reasonable be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure." (Emphasis added.)

We note that the children did not seek to examine a public officer as to the home studies during a hearing, nor did they request a release of information to the public under the provisions of the Public Records Act. Rather, they sought access to information in SCF's files that was pertinent to their appearance before the adoption committee and relevant to the advocacy of their interests regarding adoption before the juvenile court. The juvenile court's order provides that the copies of the home studies shall have the "identifying information (such as names and addresses) redacted" and that "the children's attorney shall not redisclose the information contained therein, without prior consent of SOSCF or the Court." Thus, the information disclosed to the children's attorney remains unavailable to the public by the very terms

of the court's order. We conclude that under the circumstances, the exemptions under ORS 192.502(2) and (4) are therefore inapplicable. There is no "public disclosure" that "constitutes an unreasonable invasion of privacy," and the information in the home studies disclosed by the order is integral to the adoption process occurring in the agency and in the court.

■        SCF also asserts that ORS 409.225 (1997) prohibits it from disclosing personal and private information of the kind found in adoptive home studies. Section (1) of that statute provides, in relevant part:

> "In the interest of family privacy and for the protection of children, families and other recipients of services, [SCF] shall not disclose or use the contents of any records, files, papers or communications that contain any information about an individual child, family or other recipient of services *for purposes other than those directly connected with the administration of child welfare laws or unless required or authorized by ORS 419A.255 or 419B.035. The records, files, papers and communications are confidential and are not available for public inspection. * * *"* (Emphasis added.)

ORS 419A.255 pertains to the court record in a juvenile case and provides, in section (1) and (2), that the attorney of record for the child is entitled to a copy. ORS 419B.035 provides, in part:

> "(1)   Notwithstanding the provisions of ORS 192.001 to 192.170, 192.210 to 192.505 [the Public Records Law] and 192.610 to 192.990 relating to confidentiality and accessibility for public inspection of public records and public documents, reports and records compiled under the provisions of ORS 419B.010 to 419B.050 [pertaining to reports and investigation of child abuse] are confidential and are not accessible for public inspection. However, [SCF] shall make records available to:
>
> "* * * * *
>
> "(c)   Attorneys of record for the child * * * in any juvenile court proceeding[.]"

To the extent, if any, that these statutes impose a duty on SCF to keep adoptive home studies confidential, the prohibition is against public disclosure "for purposes other than

those directly connected with the administration of child welfare laws," and the exceptions in the statutes consistently allow disclosure to the children's attorney of record.

■ Finally, SCF asserts that OAR 431-010-0040(1)(a) requires that the adoptive home studies not be disclosed.[10] However, section (7) of that administrative rule provides that an attorney of record "may have access to the records * * *." Significantly, we observe that OAR 413-010-0000 provides: "The purpose of these rules is to describe the conditions under which information about *clients* can be shared and to whom the information can be given *without an order of the court*." (Emphasis added.) It is correct that under *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994), we defer to a plausible interpretation by an agency of its own rules. Assuming without deciding that SCF's interpretation is plausible, SCF cannot by rule usurp the mandate of the legislature. Thus, the legislature has left it for the juvenile court, rather than the attorney or SCF, to decide whether the adoption reports should be made available to the child's attorney at this point in the proceeding.

The legislature has given the juvenile court authority to ensure that the best interests of the children within its jurisdiction are protected. SCF's view that the juvenile court has no role to play until SCF agrees to support a petition for adoption is myopic. The administrative process of selecting an adoptive home is part of the process that leads to a decree of adoption, the final exercise of the court's authority on behalf of its ward. The legislature has specifically authorized the appointment of counsel on behalf of dependent children in juvenile court. Implicit in that grant is the grant of discretionary authority to the juvenile court to provide information

---

[10] OAR 413-010-0040 provides, in relevant part:

"(1) A person having access to SOSCF records has the freedom to look at, obtain copies, and make use of the information contained in the record, with the exception of the following:

"(a) Information about adoptive placements and sealed adoption records;

"(6) An attorney may have access to records when written authorization is provided by the person entitled to access.

"(7) When the juvenile court confirms that a person is the attorney of record in a juvenile court proceeding, the attorney may have access to the records without the written authorization of the client."

to counsel that will enable counsel to perform counsel's statutorily mandated role when an adoption is proposed. At the same time, the court is able to protect the interest of the proposed adoptive parents in the proper exercise of its discretion under that grant. Because the juvenile court in this case properly took those interests into account when it made its ruling, it did not abuse its discretion by ordering SCF to make its home studies available to counsel under these circumstances.

Affirmed.